## UNITED STATES OF AMERICA
## EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION
## CIVIL ACTION NO. _____

VALENTINA FRYMYER                                PLAINTIFF

VS:                         **COMPLAINT**

MADISON COUNTY DETENTION CENTER;

AND

STEVE TUSSEY, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITIES AS MADISON COUNTY JAILER;

AND

WEST KENTUCKY CORRECTIONAL HEALTHCARE, LLC

AND

UNKNOWN EMPLOYEES OF MADISON COUNTY DETENTION
CENTER, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES

AND

UNKNOWN EMPLOYEES OF WEST KENTUCKY
CORRECTIONAL HEALTHCARE, LLC                       DEFENDANTS

**\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\***

Comes the Plaintiff, Valentina Frymyer, by and through counsel, and for her claims and causes of action against the Defendants named herein, states as follows:

### INTRODUCTION

1. The Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, prohibits jails from denying access to medications for opioid use disorder (OUD) without individually

assessing the medical needs of those to whom it is denying access. Jails provide health care services to those they incarcerate. The ADA requires that people with OUD be given an equal opportunity to benefit from those services. The ADA also requires that jails make reasonable modifications to their policies or practices to avoid discriminating against incarcerated individuals with disabilities. For many individuals with OUD, effective treatment for their disability will include the use of medications approved by the United States Food and Drug Administration (FDA) to treat OUD. Thus, when a jail categorically limits access to OUD medications, without individually assessing whether they may be medically necessary to treat specific individuals with OUD, the jail denies those individuals an equal opportunity to benefit from its healthcare services and violates the ADA.

2. Plaintiff, Valentina Frymyer, brings this action against the Defendants for violating her rights under the United States Constitution, the ADA, and state negligence law when they refused to provide her with the methadone that she had been prescribed to treat her OUD before her incarceration. As a result of their refusal to provide her with her prescribed methadone, the Plaintiff suffered a tragic miscarriage when she was thirty-eight (38) weeks pregnant.

## JURISDICTION AND VENUE

3. Plaintiff, Valentina Frymyer, is a resident of Madison County, Kentucky, with an address of 211 Evansdale Avenue, #211, Richmond, Kentucky 40475. Plaintiff is currently incarcerated in the Grayson County Detention Center.

4. Defendant, Madison County Detention Center, is a governmental department of Madison County, Kentucky and the Commonwealth of Kentucky. Service may be had upon this

Defendant by serving the Madison County Jailer at his office address of Madison County Detention Center, 107 West Irvine Street, Richmond, Kentucky 40475.

5. Defendant, Steve Tussey, in his Individual and Official Capacities as Jailer of Madison County, Kentucky (hereinafter "Defendant, Steve Tussey"), is and was at all times relevant hereto, a resident of Madison County, Kentucky. Service may be had upon this Defendant at his business address, Madison County Detention Center, 107 West Irvine Street, Richmond, Kentucky 40475.

6. Defendant, West Kentucky Correctional Healthcare, LLC. ("WKCH"), is a limited liability company which at all times mentioned herein employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of its' health care professionals operating in MCDC.

7. At all times relevant to this Complaint, Unknown Defendants are believed to be either additional employees of Madison County, Kentucky and MCDC, and/or employees of Defendant WKCH.

8. All acts complained of herein occurred in Madison County, Kentucky, and the damages are in excess of the jurisdictional limits of this Court and the amount-in-controversy requirements of the diversity jurisdictional limits of the United States District Court for the Eastern District of Kentucky.

**FACTS**

9. Plaintiff, Valentina Frymyer (Hereinafter "Plaintiff Frymyer"), adopts and reiterates each and every allegation as if set out fully herein and incorporates the same by reference.

10. At all times relevant hereto, Plaintiff, Valentina Frymyer, was an inmate housed at the Madison County Detention Center. At all times relevant hereto, Plaintiff was pregnant and was an individual with a disability because she had OUD.

11. At all times relevant hereto, Defendant, Steve Tussey, was employed as the Jailer of the Madison County Detention Center and was acting at all times relevant hereto in both his individual and official capacities.

12. At all times relevant hereto, the Defendants named herein were charged with the duty of overseeing the health, safety, and overall care of inmates housed at and/or otherwise under the care, custody, and control of the Madison County Detention Center.

13. At all times relevant hereto, the Defendants named herein were charged with the duty of complying with the laws, regulations, advisory opinions, common law, and Constitution of the Commonwealth of Kentucky.

14. At all times relevant hereto, the Defendants named herein were charged with the duty of complying with the laws, regulations, advisory opinions, common law, and Constitution of the United States of America.

15. At all times relevant herein, the Defendants named herein were acting under the color of law.

16. On October 12, 2023, Plaintiff Frymyer appeared in Madison Circuit Court and was sentenced to prison for three different narcotic related crimes that she had previously pled guilty to.

17. After being sentenced in open Court by the Circuit Judge of Madison County, Plaintiff Frymyer was taken to the Madison County Detention Center and / or was under the custody, care, and control of the Defendants named herein.

18. Prior to being sentenced and entering the Madison County Detention Center, Plaintiff Frymyer was diagnosed with OUD, an addictive chronic disease, and prescribed methadone. Methadone is prescribed to individuals with OUD and is utilized as a medication-assisted treatment for OUD.

19. Scientific and medical evidence demonstrates that medication-assisted treatment for OUD is the appropriate treatment for OUD. [1]

20. The Madison County Detention Center was put on notice that Plaintiff Frymyer was prescribed methadone.

21. While under the custody, care, and control of the Defendants, Plaintiff was unlawfully and unreasonably denied her methadone which was lawfully prescribed to her by a medical practitioner.

22. If an individual with OUD is on methadone as treatment for OUD – especially a pregnant individual such as the Plaintiff – the standard of care provides that the methadone should not be abruptly stopped.

23. Moreover, according to the American Society of Addiction Medicine's ("ASAM") guidelines, *The ASAM National Practice Guideline for the Treatment of Opiod Use Disorder,* "Opioid Withdrawal (i.e. detoxification) on its own without ongoing treatment for opioid use disorder is not a treatment for opioid use disorder." [2]

---

[1] American Society of Addiction Medicine, *The ASAM National Practice Guideline for the Treatment of Opioid Use Disorder, Focused Update* (2020) at 34.
[2] *Id.* at 35.

24. Similarly, to the extent that withdrawal is medically necessary, ASAM provides that methadone and buprenorphine for opioid withdrawal management is recommended over the abrupt cessation of opioids such as with detoxification protocols. [3]

25. Based upon information and belief, and as a result of the denial of the Plaintiff Frymyer's prescription medication of methadone, Plaintiff was caused to suffer a miscarriage.

26. On October 17, 2023, just five (5) days after entering the jail, Plaintiff Frymyer was rushed from the Madison County Detention Center to the University of Kentucky Hospital because she was experiencing withdrawal from methadone, strong uterine contractions, vaginal fluid leakage and decreased fetal movement.

27. Once she arrived at the hospital, doctors were unable to detect a heartbeat for Plaintiff Frymyer's baby. Tragically, Plaintiff Frymyer delivered a deceased female infant when she was thirty-eight (38) weeks and two (2) days pregnant.

28. The doctors in Plaintiff Frymyer's medical records specifically noted that she went nearly a week without her prescribed methadone. Additionally, it was noted in her medical records that the doctors would not release her back to the Madison County Detention Center until they were assured that she would be provided her prescribed methadone:

> Previously patient had been on 120mg of methadone daily but went nearly a week without methadone. She was started on methadone 60 BID, then transitioned to 100mg daily on HD#3, as methadone requirements can change in the postpartum period. This dose was adequate for her and managing her symptoms. There were issues with Madison County Detention Center regarding the availability of methadone in the jail itself and whether or not someone was able to prescribe it for her. After much investigation and communication, Dr. Parilla was assured by the medical director as well as the physician in the jail that they would be able to prescribe and administer her methadone appropriately. When the methadone was communicated to be in the detention center, she was discharged to the center on PPD#3.

[4]

---

[3] *Id.*
[4] Excerpt from Plaintiff Frymyer's Medical Records.

29. Defendants' failure to provide methadone to Plaintiff Frymyer caused her to suffer forced withdrawal from the methadone which in turn caused her to have this tragic late pregnancy miscarriage.

30. As a result of the circumstances described herein, the Defendants failed in its duties to ensure the safety of Plaintiff Frymyer and her unborn child.

31. Defendants' refusal to provide Plaintiff Frymyer with her methadone, which is not the medical standard of care, disregards the express judgment of her treating physician who her placed her on the methadone treatment plan, and also disregards sound medicine, including the broad consensus in the scientific community.

32. As the direct and proximate result of the failure of the duties described herein, Plaintiff, Frymyer, was severely and permanently injured both mentally and physically while in the care and under the supervision of the Defendants named herein by causing her to miscarry.

33. The Defendants named herein were aware that the denial of a lawful prescription medication, including specifically the methadone prescribed to Plaintiff, Valentina Frymyer, was a violation of the Americans with Disabilities Act, along with other laws, statutes, regulations, and the Constitutions of the Commonwealth of Kentucky and the United States of America.

34. As a result of the conduct as described herein, the Defendants actionably violated Plaintiff, Valentina Frymyer's, rights pursuant to 42 U.S.C. §1983.

**Opioid Use Disorder is Recognized as a Serious Medical Condition Requiring Treatment**

35. OUD is a chronic brain disease. Symptoms of OUD include uncontrollable cravings for and compulsive use of opioids, decreased sensitivity to opioids, and potentially excruciating withdrawal symptoms.

36. OUD permanently rewires the brain for addiction. People with OUD cannot simply "will" or "reason" their way out of continued opioid use, even when they are aware of the dire consequences of continued use. Continued use does not indicate a person lacks will power, but rather is the predictable outcome of chemical changes in the brain that result in uncontrollable cravings.

37. Opioids are a class of drugs that inhibit pain and cause feelings of pleasure. Some opioids have accepted medical uses, including managing severe or chronic pain. Others are clearly illegal and not used for medicine in the United States. All Opioids are highly addictive.

38. Without effective treatment, individuals with OUD are rarely able to control their use of opioids, often resulting in serious physical harm or premature death, including due to accidental overdose.

39. OUD has proven to be non-responsive to abstinence-only based treatment, which is common in treating alcoholism, because of the alteration in the brain's biological pathways caused by Opioids.

40. OUD is an epidemic in the United States and a public health crisis. In 2022 alone, the Centers for Disease Control reported 107,941 drug overdose deaths. [5]

**Correctional Best Practices Regarding Treatment of OUD**

41. In recent years, the U.S. Department of Justice ("DOJ") has consistently taken the position that access to medication for treatment of OUD is required in jails. DOJ has confirmed that medication such as methadone to treat OUD is the standard of care for

---

[5] https://www.cdc.gov/nchs/products/databriefs/db491.htm#:~:text=Statistics%20System%2C%20Mortality-,The%20overall%20rate%20of%20drug%20overdose%20deaths%20remained%20stable%20between,standard%20population%20(Figure%201).

OUD and that denying access to such medication can constitute unlawful disability discrimination.

42. On April 4, 2024, the United States Attorney's Office for the Eastern District of Kentucky issued a letter to correctional facilities throughout the state to:

> "remind our local correctional facilities of the federal requirements of the Americans with Disabilities Act ("ADA"). Specifically, under the ADA, correctional facilities cannot deny healthcare services, including lawfully prescribed medication, to individuals based upon the type of medication prescribed. This includes buprenorphine (Suboxone), naltrexone, or methadone, which are used to treat Opioid Use Disorder ("OUD"). Individuals being treated with medication for OUD are generally considered disabled and are protected by the ADA
>
> Because the ADA prohibits discrimination based on disability, correctional facilities that deny healthcare services to individuals because of their OUD treatment discriminate against those with OUD. To comply with the non-discrimination requirements of the ADA, correctional facilities that provide healthcare services may not change or discontinue an individual's medication used to treat OUD, except upon an individualized determination made by a licensed healthcare provider that treatment is no longer appropriate based on the individual's current condition. Further, correctional facilities must offer treatment with medication for OUD to all individuals in custody for whom such treatment is medically appropriate. Finally, correctional facilities must train their staff in the requirements of the ADA."

(*See* Exhibit "A" – April 4, 2024 DOJ Letter).

43. In this case, the denial of Plaintiff Frymyer's prescribed methadone treatment caused her to miscarry and tragically lose her child and to suffer greatly, both physically and mentally.

## COUNT I: VIOLATION OF THE AMERICAN WITH DISABILITIES ACT
### (AGAINST ALL DEFENDANTS)

44. Plaintiff hereby incorporates by reference the allegations contained in each and every preceding paragraph, as if fully set forth herein.

45. Plaintiff is a qualified individual with a disability (OUD) which substantially limits her major life activities.

46. Defendants discriminated against and caused Plaintiff Frymyer to be excluded from programs, services, and activities at the Madison County Detention Center, due to her disability, in violation of Title II of the American with Disabilities Act.

47. As a direct and proximate result of this ADA violation by the Defendants named herein, both directly and vicariously through their agents, servants, employees, or representatives, Plaintiff Frymyer, has been caused to suffer damages in excess of the jurisdictional limit of this Court and jurisdictional limit of the United States District Court for the Eastern District of Kentucky.

### COUNT II: 42 U.S.C. SECTION 1983 - DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS UNDER THE FOURTEENTH & EIGHT AMENDMENTS
### (AGAINST ALL DEFENDANTS)

48. Plaintiff Frymyer adopts and reiterates each and every allegation as if set out fully herein and incorporates the same by reference.

49. Defendants acting under color of law, deprived Plaintiff Frymyer of her constitutional rights under the 8th and 14th Amendments to the U. S. Constitution in that they were deliberately indifferent to his obvious medical needs which resulted in her having a tragic miscarriage.

50. Plaintiff Frymyer had a serious medical need in that she had a condition that a licensed medical provider determined required treatment or a condition so obvious that even someone who is not a licensed medical provider would recognize required treatment.

51. Defendants knew that Plaintiff Frymyer had a serious medical need or strongly suspected facts showing a strong likelihood that Plaintiff Frymyer had a serious medical need, but failed to confirm whether these facts were true.

52. Defendants were aware of the risks to which they exposed Plaintiff Frymyer, and acted with deliberate indifference to her serious medical need and to her health, safety and well-being.

53. Defendants consciously failed to take reasonable measures to provide or obtain treatment for Plaintiff Frymyer's serious medical need.

54. The actions of the Defendants were in furtherance of, and consistent with, one or more policies or practices established by the Defendants.

55. The actions of the Defendants constituted cruel and unusual punishment in violation of the Eighth Amendment to the U. S. Constitution, denial of substantive due process in violation of the Fourteenth Amendment to the U. S. Constitution, and cruel and arbitrary action in violation of Article 2 of the Kentucky Constitution.

56. As a direct and proximate result of Defendants' actions and violations of Plaintiff Frymyer's constitutional rights, she was seriously harmed, subjected to a significant risk of harm, or both, which resulted in Plaintiff Frymyer suffering a tragic and painful miscarriage which was preventable, and she has suffered damages as a result.

57. In addition to compensatory damages, interest, expenses, and court costs, Kinney is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. Section 1988. [6]

### COUNT III: NEGLIGENCE/GROSS NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

58. Plaintiff, Frymyer, adopts and reiterates each and every allegation as if set out fully herein and incorporates the same by reference.

---

[6] Exhibit "B" – Certificate of Merit

59. At all times relevant here, the Defendants named herein, along with their employees, agents, representatives, and servants, were charged with a duty to exercise ordinary care to avoid foreseeable injuries to its inmates, including Plaintiff, Valentina Frymyer.

60. At all times relevant hereto, the Defendants named herein, along with their employees, agents, representatives, and servants, knew or should have known that their actions as discussed *supra* were likely to cause harm to Plaintiff, Valentina Frymyer.

61. The Defendants named herein, along with their employees, agents, representatives, and servants, breached their duty to Plaintiff, Valentina Frymer, and thereby directly and proximately caused the injuries and damages to the Plaintiff as set out herein.

62. The Defendants named herein are vicariously liable for the actions of their employees, agents, representatives, and servants under the doctrine of *respondeat superior*.

63. The Defendants named herein were at all times herein charged with a duty to inmates, including the Plaintiff, to properly train, supervise, retain, and oversee their employees.

64. The Defendants named herein violated their duty to the Plaintiff to properly train, supervise, retain, and oversee their employees.

65. As a direct and proximate result of the negligence of the Defendants named herein, both directly and vicariously through their agents, servants, employees, or representatives, Plaintiff, Valentina Frymyer, has been caused to suffer damages in excess of the jurisdictional limit of this Court and jurisdictional limit of the United States District Court for the Eastern District of Kentucky.

**COUNT IV: NEGLIGENCE PER SE**
**(AGAINST ALL DEFENDANTS)**

66. Plaintiff, Frymyer, adopts and reiterates each and every allegation as if set out fully herein and incorporates the same by reference.

67. The actions of the Defendants named herein, as described herein, constitute negligence per se.

68. The Defendants named herein violated, at a minimum, the provisions of KRS 71, *et seq.*, the Plaintiff's rights under the United States Constitution, the Plaintiff's rights under the Kentucky Constitution, and the provisions of the Americans with Disabilities Act, both as codified and as interpreted by the common law and/or the United States Department of Justice.

69. The Defendants named herein are liable to Plaintiff, Valentina Frymyer, for all damages as set forth herein and that flow from said negligence per se in an amount which is in excess of the jurisdictional limit of this Court and jurisdictional limit of the United States District Court for the Eastern District of Kentucky.

## COUNT V: PUNITIVE DAMAGES

70. Plaintiff, Frymyer, adopts and reiterates each and every allegation as if set out fully herein and incorporates the same by reference.

71. The actions of the Defendants, along with their agents, employees, representatives, and servants, as described herein, constitute such willful violations of the Plaintiff's rights and/or such gross negligence so as to warrant the imposition of punitive damages.

72. The imposition of punitive damages is necessary to deter the conduct of these defendants and those similarly situated, now and in the future.

## DAMAGES

73. Plaintiff Frymyer, adopts and reiterates each and every allegation as if set out fully herein and incorporates the same by reference.

74. As a direct and proximate result of the negligence of Defendants named herein, Plaintiff Frymyer, has suffered serious bodily injuries and because of the serious bodily injuries she sustained, Plaintiff Frymyer has been caused to suffer pain, suffering, mental anguish, and inconvenience and will continue to suffer such pain, suffering, mental anguish, and inconvenience in the future.

75. As a direct and proximate result of the negligence of Defendants named herein, Plaintiff Frymyer, has incurred, and will incur in the future, medical expenses and their attendant costs.

76. As a direct and proximate result of the negligence of Defendants named herein, Plaintiff Frymyer, has sustained an increased likelihood of suffering harm in the future.

77. As a direct and proximate result of the negligence of Defendants named herein, Plaintiff Frymyer, has been caused to suffer damages in excess of the jurisdictional limit of this Court and jurisdictional limit of the United States District Court for the Eastern District of Kentucky.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands as follows:

1. That the Clerk of this Court issue Summons and direct a copy of this Complaint to Defendant, Madison County Detention Center, by and through Jailer Steve Tussey, at the Madison County Detention Center located at 107 West Irvine Street, Richmond, Kentucky 40475.

2. That the Clerk of this Court issue Summons and direct a copy of this Complaint to Defendant, Steve Tussey, in his Individual and Official Capacities, at the Madison County Detention Center located at 107 West Irvine Street, Richmond, Kentucky 40475.

3. Judgment against Defendants, Madison County Detention Center and Steve Tussey, West Kentucky Correctional Healthcare, LLC, and unknown Defendants jointly and severally, or in accordance with each Defendant's apportionment of fault, as the law may prescribe, in excess of the jurisdictional limit of this Court and the United States District Court for the Eastern District of Kentucky, said amount to be that which is to be determined as being fair and reasonable by all of the evidence, for the following elements of damage:

    a. Past physical pain, suffering, and inconvenience;

    b. Future physical pain, suffering, and inconvenience;

    c. Past mental anguish;

    d. Future mental anguish;

    e. Past medical expenses;

    f. Future medical expenses;

    g. Increased likelihood for harm in the future; and

    h. Punitive damages.

4. Pre-judgment and post-judgment interest.

5. Attorneys' fees.

6. Trial by jury.

7. Plaintiff's costs herein expended.

8. Any and all other relief to which the Plaintiff may appear to be entitled.

        Respectfully Submitted,

        */s/ Noel Caldwell*
        Noel Caldwell
        NOEL CALDWELL ATTORNEY AT LAW PLLC
        153 Market Street
        Lexington, Kentucky 40507

Telephone: 859-494-4780
Facsimile: 859-231-7588
ncaldwell@noelcaldwell.com

AND

Ryan Biggerstaff
BIGGERSTAFF LAW OFFICE PLLC
Post Office Box 1471
Lexington, Kentucky 40588
Telephone: 606-219-2688
Ryan@biggerstafflawoffice.com

AND

Erik S. Young
ERIK S. YOUNG, PLLC
169 East Reynolds Road, Suite 203A
Lexington, KY 40517
859-699-3791
erik@esylegal.com