UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| VALENTINA FRYMYER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 24-290-DCR |
| ) | |
| V. ) | |
| ) | |
| MADISON COUNTY DETENTION ) | **MEMORANDUM OPINION** |
| CENTER, et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant West Kentucky Correctional Healthcare, LLC's ("WKCH") motion to dismiss several claims contained in Plaintiff Valentina Frymyer's ("Frymyer") Amended Complaint. [Record No. 10] Additionally, Frymyer has moved for entry of default against Defendants Madison County Detention Center ("MCDC") and Madison County Jailer Steve Tussey ("Tussey"). For the reasons outlined below, several claims made against WKCH will be dismissed. However, the motion will be denied regarding other claims made against it. The Court also will deny entry of default against Defendants MCDC and Tussey.

**I. BACKGROUND**

After pleading guilty to three narcotics-related offenses, Frymyer was sentenced by the Madison Circuit Court on October 12, 2023. [Record No. 6, ¶ 16] She was booked into the Madison County Detention Center ("MCDC") that same day. [*Id.*, ¶ 17] Frymyer was approximately thirty-seven weeks pregnant at the time of her booking and had been prescribed daily methadone to treat her opioid use disorder ("OUD"). [*Id.*, ¶¶ 18, 27]

- 1 -

Despite the defendants' awareness that Frymyer was in the late stages of her pregnancy and had been prescribed daily methadone, she alleges that she was denied the drug for five days. [*See id.*, ¶¶ 20–21, 26.] On the fifth day of incarceration and while suffering withdrawal, she experienced strong uterine contractions, leaking amniotic fluid, and decreased fetal movement. [*Id.,* ¶ 26] Frymyer was transported to the University of Kentucky Hospital, but the infant's heartbeat could not be detected. [*Id.*, ¶ 27] Soon thereafter, the plaintiff delivered a full-term stillborn female infant. [*Id.*]

## II.  PROCEDURAL HISTORY

Frymyer filed this action on October 14, 2024, asserting five counts against: WKCH; MCDC; Steve Tussey, in his individual and official capacity as Madison County Jailer; unknown employees of the MCDC, in their individual and official capacities; and unknown employees of WKCH, in their individual and official capacities. [Record No. 1] Frymyer's original Complaint did not include a claim for loss of consortium. However, that claim was later added in Frymyer's Amended Complaint which was filed October 18, 2024. [Record No. 6] And notwithstanding the addition of a claim for loss of consortium, an additional party plaintiff was not added at the time the amended pleading was filed.[1]

---

[1] Frymyer's Amended Complaint includes the following counts for relief: Count I (alleging a violation of the American with Disabilities Act; Count II (alleging deliberate indifference to the plaintiff's serious medical needs in violation of the Fourteenth and Eight Amendments to the United States Constitution and Article 2 of the Kentucky Constitution); Count III (alleging negligence and gross negligence under Kentucky law); Count IV (alleging negligence *per se* based on claimed violations of Kentucky Revised Statutes ("KRS") Chapter 71, *et seq.*, the United States Constitution, the Kentucky Constitution, and the ADA; Count V (alleging loss of consortium under Kentucky law); and Count VI (punitive damages).

The record did not reflect that service had been accomplished by late December 2024. As a result, on December 27, 2024, the plaintiff was directed to file a status report outlining all activity since the filing of the Amended Complaint. [Record No. 8] Frymyer's counsel responded by representing that "each Defendant received the summons on December 19, 2024, . . . [and that] counsel subsequently received a signed receipt from [WKCH] . . ." [Record No. 9] Thereafter, on January 9, 2025, WKCH moved to dismiss the plaintiff's Amended Complaint. Frymyer responded to the motion to dismiss on January 17, 2025. [Record No. 16]

Frymyer did not contest the dismissal of Count I in her response and, in fact, sought to dismiss that count from her Amended Complaint as it relates to WKHC. [*Id*., p. 4] Further, she did not contest dismissal of the stand-alone claim for punitive damages (Count VI). And while Frymyer did not address the claim for loss of consortium in her response to WKCH's motion, she asserts that sufficient facts have been alleged to proceed against that defendant regarding the other claims contained in Counts II, III, and IV.[2]

### III. STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible upon its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court need not accept legal conclusions or unwarranted factual inferences,

---

[2] In response to a second show cause order, Frymyer moved for entry of default against Defendants MCDC and Tussey on February 26, 2025. [Record No. 19] However, on the same date, these defendants moved to dismiss the claims asserted against them in the plaintiff's Amended Complaint for failure to be properly served. [Record No. 22] The plaintiff's motion for entry of default will be denied and the defendant's motion to dismiss will be addressed following full briefing of the issues presented in that motion.

the allegations contained in the complaint must be accepted as true and all reasonable inferences must be construed in the plaintiff's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). However, the Court will dismiss a complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## IV. LEGAL ANALYSIS

WKCH argues that, because it is not a public entity, it cannot be sued under the ADA. It further contends that: the plaintiff fails to allege sufficient facts to state a claim for deliberate indifference, which can only be brought under the Eighth Amendment; no valid violation of law is alleged to support a negligence *per se* claim; the plaintiff fails to state a claim for negligence against WKCH; and punitive damages cannot stand as an independent cause of action. [Record No. 10-1][3]

As noted previously, some of WKCH's arguments are not disputed. More specifically, Frymyer concedes that she cannot bring a violation of the ADA claim against WKCH. [Record No. 16, p. 3] However, she believes that she can proceed with those claims against other defendants. [*Id*.] And by presenting no argument that punitive damages constitute a stand-alone cause of action, Frymyer accepts that this claim should be dismissed. Similarly, she makes no argument that her Fourteenth Amendment deliberate indifference claim against

---

[3] Apparently assuming success on the negligence claim, WKCH does not separately address whether Frymyer's more difficult to prove claim of gross negligence should be dismissed. [*See* Record No. 10, pp. 6-7.] However, by not addressing that issue, the motion to dismiss the claim of gross negligence will be denied regarding that cause of action from Count III of the Amended Complaint.

WKCH can survive dismissal or that she has a factual basis to make a claim for loss of consortium.

Finally, Frymyer cannot demonstrate that a viable cause of action exists under KRS 446.070 for alleged violations of the United States and Kentucky Constitutions or the ADA.

### A.  42 U.S.C. § 1983-Claim of Deliberate Indifference

In Count II of the Amended Complaint, Frymyer alleges, in part, that "Defendants acting under color of law, deprived [her] of her constitutional rights under the 8th and 14th Amendments to the U. S. Constitution in that they were deliberately indifferent to his [sic] obvious medical needs which resulted in her having a tragic miscarriage." [Record No. 6, ¶ 49] She further asserts that "[t]he actions of the Defendants constituted cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution, denial of substantive due process in violation of the Fourteenth Amendment to the U.S. Constitution, and cruel and arbitrary action in violation of Article 2 of the Kentucky Constitution." [Record No. 6, ¶ 55]

"To prevail . . . under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (citations and quotations omitted).  "[P]rivate medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983." *Id.* (citing *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008)).

A post-conviction detainee's Section 1983 deliberate indifference claim arises from the Eighth Amendment and includes an objective and subjective component. *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 315 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024)

(citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The objective component considers the conditions that led to the alleged violation and "'requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Constitution.'" *Helphenstine*, 60 F.4th at 315 (quoting *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020) (cleaned up)).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Griffith*, 975 F.3d at 567 (citations and quotations omitted).

Meanwhile, the subjective component requires that the plaintiff "show that a defendant 'knew of and disregarded an excessive risk to inmate health or safety,'" the defendant was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,'" and the official drew that inference. *Helphenstine*, 60 F.4th at 315 (cleaned up) (quoting *Farmer*, 511 U.S. at 837).  The plaintiff need not show that the defendant acted with the intent to cause harm, rather he or she "must show something greater than negligence or malpractice."  The requisite standard "has generally been equated with one of 'recklessness.'" *Winkler*, 893 F.3d at 890 (quoting *Farmer*, 511 U.S. at 836).  Courts are hesitant to "second guess the medical judgment of prison officials," but the United States Sixth Circuit Court of Appeals has found deliberate indifference where "medical care . . . is so cursory as to amount to no treatment at all." *Winkler*, 893 F.3d at 890 (internal citations and quotations omitted).

WKCH applied the legal standard for a *Monell* claim in its motion to dismiss rather than the standard for deliberate indifference for medical professionals acting under color of law.  [*See* Record No. 10-1, pp. 5–6 and Record No. 17, p. 2.]  Therefore, it has not shown that the plaintiff has failed to state a claim under the Eighth Amendment to the United States Constitution.  However, for the reasons outlined above, so much of Count II of the Amended

Complaint that seeks to assert a claim against WKCH for deliberate indifference based on the Fourteenth Amendment to the United States Constitution will be dismissed.

### B. Negligence *Per Se*

In Kentucky, a cause of action for negligence *per se* is codified in KRS 446.070. The statute provides that "[a] person injured by the violation of any *statute* may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (Emphasis added) (cleaned up) (quoting KRS 446.070). However, "[v]iolations of federal laws . . . do not create a cause of action based on KRS 446.070." *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534–35 (Ky. 2011) Likewise, KRS 446.070 does not create a private right of action under the Kentucky constitution because the word *statute* cannot be construed to mean *constitution*. *Id.* at 535–36.

Frymyer's Amended Complaint alleges that the defendants are liable for negligence *per se* for violating her rights under the "provisions of KRS 71, *et seq.*," the United States and Kentucky Constitutions, and the ADA. [Record No. 6, ¶¶ 67–69] However, WKCH contends that this claim fails because Frymyer does not allege any violations of law that support a cause of action for negligence *per se*. [Record No. 10-1, p. 6] While WKCH is correct that Frymyer does not have a cause of action under either constitution or the ADA, she has properly pled a violation under KRS Chapter 71. Because WKCH did not argue that Chapter 71[4] was inapplicable, its motion will be denied with respect to this particular claim. The motion will

---

[4] Kentucky Revised Statutes Chapter 71 outlines the roles and responsibilities of jailers. Thus, the plaintiff may have a more difficult hurdle to overcome if WKCH moves for summary judgment at a later stage of the proceedings.

be granted to the extent that claims of negligence *per se* are asserted against it based upon alleged violations of the United States Constitution, the Kentucky Constitution, and the ADA.

## C. Negligence

To assert a negligence claim under Kentucky law, a plaintiff must allege "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright*, 381 S.W.3d at 213 (citations omitted). An employer may be held vicariously liable when "the employee's actions were in the course and scope of his employment and in furtherance of the employer's business." *Easterling v. Man-O-War Automotive, Inc.*, 223 S.W.3d 852, 855 (Ky. App. 2007). Additionally, an employer can be directly liable for failing to exercise ordinary care regarding its hiring or training of employees "when an employee creates a foreseeable risk of harm to a third person." *See Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998). This can be accomplished by showing the employee was unfit for the job, and the employee's hiring or retention created an unreasonable risk of harm to the injured person. *Id.*

WKCH argues that the Amended Complaint is "devoid of factual allegations to establish either the underlying liability of WKCH's employees or the liability of WKCH directly." [Record 10-1, p. 7] It also contends that Frymyer makes no "specific reference to the acts of WKCH or its employees" and that "allegations concerning the knowledge and duty of WKCH employees are conclusory and unsupported by the facts." [Record 17, p. 4] Further, WKCH insists that the pleading is "devoid of facts from which one could infer" that it "was negligent in its hiring or training of employees." *Id.*

In response, Frymyer references the following allegations from her Amended Complaint: "[d]efendants refusal to provide Plaintiff Frymyer with her methadone, which is

not the medical standard of care, disregards the express judgment of her treating physician who placed her on the methadone treatment plan, and also disregards sound medicine, including the broad consensus in the scientific community." [Record No. 6, ¶ 31 and Record No. 16, p. 7]  She further contends that the facts outlined in the Amended Complaint are that "WKCH and its unknown employees refused and failed to provide the Plaintiff with her prescribed methadone to treat her OUD while she was 38 weeks pregnant.  [And that this] failure led to the Plaintiff's miscarriage and death of her unborn child."  [Record No. 16, p. 7]

Regarding duty, the Amended Complaint contains allegations that Frymyer was in the "custody, care, and control" of the defendants who "were charged with the duty of overseeing the health, safety, and overall care of inmates housed at and/or otherwise under the care, custody, and control of the Madison County Detention Center." [Record No. 6, ¶¶ 12, 21] The pleading contends other allegations that WKCH "was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of its health care professionals operating in MCDC."  [*Id.*, ¶ 6] Additionally, Frymyer asserts that the unknown defendants are believed to be either employees of MCDC or WKCH.  [*Id.*, ¶ 7] Taken together, she has sufficiently pled that MCDC owed a duty to her while she was detained at MCDC.

As for breach, the Amended Complaint contains claims that the MCDC was on notice that Frymyer was prescribed methadone.  [*Id.*, ¶ 20] And it is reasonable to infer from the Amended Complaint that WKCH (the facility's healthcare provider) was also aware of the prescription.  Further, Frymyer pleads that when she entered MCDC, she was full-term and ready to deliver her infant.  [*Id.*, ¶¶ 26–27] Thus, while it would be routine for pregnancy tests to be administered to female inmates, Frymyer likely would have been *visibly* pregnant at that

stage of her pregnancy. She alleged in the Amended Complaint that when an individual is taking methadone, particularly one who is pregnant, the "standard of care provides that the methadone should not be abruptly stopped." [*Id.* at ¶ 22] She further provided an excerpt from her hospital notes that states, "[t]here were issues with [MCDC] regarding the availability of methadone in the jail itself and whether or not someone was able to prescribe it for [Frymyer]." [*Id.* at ¶ 28] This is sufficient to plead breach at this stage of the case.

For causation, Frymyer alleges that, "as a result of the denial of [her] prescription medication of methadone" she "was caused to suffer a miscarriage. [*Id.* at ¶ 25] The facts support this because Frymyer was denied her medication for five days which resulted in severe withdrawals, and her infant was then delivered stillborn. [*Id.* at ¶¶ 26–27] The injuries claimed stem from the loss of her infant.

Contrary to WKCH's contention that Frymyer has not alleged facts from which one could infer that it was negligent in its training or hiring of employees, she pled that the well-known standard in the medical community was to not cease methadone abruptly, particularly for pregnant patients. Frymyer alleges that her methadone treatment was stopped upon booking at MCDC, and her hospital note excerpt supports that claim. The substandard care Frymyer alleges on the part of WKCH creates a reasonable inference that it was negligent in hiring or training the medical provider at MCDC.

## V. CONCLUSION

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.    Defendant West Kentucky Correctional Healthcare, LLC's Motion to Dismiss [Record No. 10] is **GRANTED** regarding the following claims asserted against it:

- 10 -

  (a)  alleged violation of the Americans with Disabilities Act (Count I);

  (b)  deliberate indifference under 42 U.S.C. § 1983 based upon protections provided by the Fourteenth Amendment to the United States Constitution (Count II);

  (c)  negligence *per se* based upon alleged violations of the United States Constitution, the Kentucky Constitution; and the Americans with Disabilities Act (Count IV);

  (d)  punitive damages as an independent cause of action (Count VI); and

  (e)  loss of consortium (Count V).

  2.  Defendant West Kentucky Correctional Healthcare, LLC's Motion to Dismiss [Record No. 10] is **DENIED** regarding the following claims asserted against it:

  (a) deliberate indifference under 42 U.S.C. § 1983 based upon protections provided by the Eighth Amendment to the United States Constitution (Count II);

  (b) negligence and gross negligence (Count III); and

  (c) negligence *per se* for alleged violations under KRS, Chapter 71 (Count IV).

  3.  Plaintiff Valentina Frymyer's motion for entry of default [Record No. 19] is **DENIED**.

Dated: March 3, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky

- 11 -