UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| VALENTINA FRYMYER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 24-290-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MADISON COUNTY DETENTION | ) | **MEMORANDUM OPINION** |
| CENTER, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of the motion to dismiss filed by Defendants Madison County Detention Center ("MCDC") and Madison County Jailer Steve Tussey, in his individual and official capacity. The moving defendants seek to dismiss a number of claims asserted by Plaintiff Valentina Frymyer. [Record No. 36] For the reasons outlined below, several of the subject claims will be dismissed; however, the motion will be denied regarding others.

## I. Background

After pleading guilty to three narcotics-related offenses, Frymyer was sentenced by the Madison Circuit Court on October 12, 2023. [Record No. 6 at ¶ 16] She was booked into the MCDC that same day. *Id.* at ¶ 17. Frymyer was approximately thirty-seven weeks pregnant at the time of her booking and had been prescribed daily methadone to treat opioid use disorder ("OUD"). *Id.* at ¶¶ 18, 27. The plaintiff alleges that she was denied the medication for five days despite the defendants' awareness of her prescription for the drug and her late-stage pregnancy. *See id.* at ¶¶ 20–21, 26.

- 1 -

On the fifth day of incarceration and while suffering opioid withdrawal, the plaintiff experienced strong uterine contractions, leaking amniotic fluid, and decreased fetal movement. *Id.* at ¶ 26. Frymyer was transported to the University of Kentucky Hospital, but the infant's heartbeat could not be detected. *Id.* at ¶ 27. Soon thereafter, she delivered a full-term stillborn infant. *Id.* Frymyer's attending physician refused to discharge her to MCDC until the physician was assured that she would receive methadone at the jail. The following entry was made in Frymyer's medical chart:

> [t]here were issues with [MCDC] regarding the availability of methadone in the jail itself and whether or not someone was able to prescribe it for her. After much investigation and communication, Dr. Parilla was assured by the medical director as well as the physician in the jail that they would be able to prescribe and administer her methadone appropriately.

*Id.* at ¶ 28. The physician discharged Frymyer following the above assurances. *Id.*

Frymyer filed this action against MCDC, Steve Tussey, in his individual and official capacity as Madison County Jailer, West Kentucky Correctional Healthcare LLC ("WKCH"), unknown employees of MCDC in their individual and official capacities, and unknown employees of WKCH. [Record No. 1] Her Amended Complaint includes the following counts for relief: Count I (alleging a violation of the Americans with Disabilities Act); Count II (alleging deliberate indifference to the plaintiff's serious medical needs in violation of the Fourteenth and Eighth Amendments to the United States Constitution and Article 2 of the Kentucky Constitution); Count III (alleging negligence and gross negligence under Kentucky law); Count IV (alleging negligence *per se* based on claimed violations of Kentucky Revised Statutes ("KRS") Chapter 71, *et seq*., the United States Constitution, the Kentucky Constitution, and the ADA; Count V (alleging loss of consortium under state law); and Count VI (punitive damages). [Record No. 6]

Previously, WKCH moved to dismiss all claims asserted against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Record No. 10]  Frymyer voluntarily dismissed Count I (ADA claim) from her Amended Complaint with respect to WKCH and she did not contest dismissal of loss of consortium (Count V) or the stand-alone claim for punitive damages (Count VI).  The undersigned ultimately determined that Frymyer failed to state a claim against WKCH for violation of the Americans with Disabilities Act (Count I); deliberate indifference under 42 U.S.C. § 1983 based upon protections provided by the Fourteenth Amendment to the United States Constitution (Count II); negligence *per se* based upon alleged violations of the United States Constitution, the Kentucky Constitution; and the Americans with Disabilities Act (Count IV); loss of consortium (Count V); and punitive damages as an independent cause of action (Count VI).  [Record No. 23]  However, Frymyer stated a claim against WKCH for deliberate indifference under 42 U.S.C. § 1983 pursuant to the protections provided by the Eighth Amendment to the United States Constitution (Count II); negligence and gross negligence (Count III); and negligence *per se* for alleged violations under KRS, Chapter 71 (Count IV).  *Id.*

Now, MCDC and Tussey move to dismiss all claims asserted against them under Rule 12(b)(6).  [Record No. 36]  They also urge dismissal of MCDC, arguing it is not a legal entity that can be sued, and they raise a qualified immunity defense for the Section 1983 claim against Tussey in his individual capacity.  [Record No. 36-1 at 3, 6–8]  In her response, Frymyer voluntarily withdrew the following claims against Tussey in his individual capacity: ADA claim (Count I) and state law claim of negligent training, supervision, and retention (Count III).  [Record No. 37 at 1]  It also withdrew the following claims against MCDC and Tussey in his official capacity: state law claims of negligence, gross negligence, negligent training,

supervision, and retention (Count III), negligence *per se* pursuant to Chapter 71 of the KRS (Count IV), and loss of consortium (Count V). *Id.* at 1–2. Finally, it withdrew the negligence *per se* claims pursuant to the United States Constitution, Kentucky Constitution, and the ADA (Count IV) against MCDC and Tussey in both his individual and official capacity. *Id.* at 2.

Based on the foregoing, the remaining contested claims asserted against the moving defendants are as follows:

(1)    the ADA claim against MCDC and Tussey in his official capacity (Count I);

(2)    the Section 1983 claim for deliberate indifference under the Eighth Amendment[1] to the United States Constitution against MCDC and Tussey in his individual and official capacity (Count II);

(3)    the state law claims of negligence, gross negligence (Count III); negligence *per se* pursuant to Chapter 71 of the KRS (Count IV); loss of consortium (Count V) against Tussey in his individual capacity; and

(4)    the punitive damages claim against MCDC and Tussey in his individual and official capacity (Count VI).

---

[1] The previous memorandum opinion and order discussed the inapplicability of a deliberate indifference claim under the Fourteenth Amendment because Frymyer was not a pretrial detainee at the time of the relevant events. [Record No. 23 at 5–7] And to the extent that she alleges a Fourteenth Amendment substantive due process claim, her Amended Complaint is inadequate. [Record No. 6 at ¶ 55 (claiming denial of substantive due process)] Rule 8 proscribes obfuscation, neither courts nor defendants should not have to "fish a gold coin from a bucket of mud" to identify the allegations at issue in a complaint. *Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021). The Amended Complaint is less than clear, resulting in difficulty to the undersigned in resolving this and the previous motion to dismiss.

## II.  Legal Standard

To survive a motion to dismiss, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible upon its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  And while the Court need not accept legal conclusions or unwarranted factual inferences, the allegations contained in the complaint are accepted as true and all reasonable inferences are construed in the plaintiff's favor.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  However, the Court will dismiss a complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Courts are generally limited to considering the pleadings in addressing a motion to dismiss, but they may consider certain items without converting the motion to one for summary judgment.  This includes materials such as public records, exhibits attached to the complaint, and those attached to the motion to dismiss "so long as they are referred to in the complaint and are central to the claims contained therein."  *Bassett*, 528 F.3d at 430.

## III.  Analysis

### A.  Substituting Madison County for MCDC

Detention centers are buildings and not a person or legal entity which may be sued.  *See Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. 2000) (holding that the Shelby County Jail is not subject to suit under § 1983).  However, the Court construes the claims against MCDC as being against Madison County because the Amended Complaint

put the county on notice of the claims against it and the Madison County Judge Executive was the proper party to serve.[2]  [*See* Record Nos. 6 at 4 and 35.]

### B.  The ADA Claim

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."  42 U.S.C. § 12132.  There are two cognizable claims under Title II: intentional discrimination and failure to make a reasonable accommodation.  *Keller v. Chippewa Cnty.*, 860 F. App'x 381, 385 (6th Cir. 2021); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004).  For both, a plaintiff must establish that she: (1) is disabled; (2) was "qualified" to take part in the "services, programs, or activities" of the public entity; (3) was "excluded from participation in" or "denied the benefits of" such "services, programs, or activities"; and (4) this exclusion or denial occurred "by reason of" her disability.  *See id.* (quoting 42 U.S.C. § 12132 (internal quotations omitted)).

A "deliberate refusal of prison officials to accommodate [an incarcerated person's] disability-related needs in such fundamentals" as medical care can constitute an "exclusion from participation in or denial of the benefits of the prison's services, programs, or activities." *United States v. Georgia*, 546 U.S. 151, 157 (2006) (citation modified) (citing 42 U.S.C. § 12132; *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998)).  A denial of such benefits must be made by an individualized inquiry and take into consideration a person's

---

[2] The undersigned notes that the plaintiff has yet to file a motion to substitute a party concerning this matter.

actual characteristics to avoid reducing a disability to stereotypes and prejudice. "'The thesis of the [ADA] is simply this: That people with disabilities ought to be judged on the basis of their abilities; they should not be judged nor discriminated against based on unfounded fear, prejudice, ignorance, or mythologies; people ought to be judged on the relevant medical evidence and the abilities they have.'" *Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998)).

For a failure to accommodate claim, a defendant can be held liable if he or she "could have reasonably accommodated the plaintiff's disability, but refused to do so." *Keller*, 860 F. App'x at 385 (citation omitted). Concerning access, a plaintiff must show that she was denied "meaningful access" to the benefits of services, programs, or activities of a public entity. *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 735 (S.D. Ohio 2022) (citing 42 U.S.C. § 12132; *Keller*, 860 F. App'x at 385).

For an intentional discrimination claim, a defendant can be held liable if a plaintiff established that his or her "'disabilities were actually considered by the defendant in formulating or implementing' the harmful policies or conduct." *Keller*, 860 F. App'x at 385 (quoting *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997)). A plaintiff "must show that the defendant took action because of the plaintiff's disability, *i.e.*, the '[p]laintiff must present evidence that animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive.'" *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015) (quoting *Turner v. City of Englewood*, 195 F. App'x 346, 353 (6th Cir. 2006)).

As an initial matter, only public entities may be sued under the ADA. *Burns v. City of Columbus, Ohio*, 91 F.3d 836, 841 (6th Cir. 1996). The term "public entity," includes "any State or local government," or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131. An ADA lawsuit "may be brought against a public entity by naming the entity itself or by suing an agent of an entity in his official capacity." *Norris v. Marrero*, No. 5:14-234-DCR, 2014 WL 7366224, at *5 (E.D. Ky. Dec. 24, 2014). Therefore, official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690 n.55 (1978)).

Here, Defendants MCDC and Tussey in his official capacity insist that Frymyer's ADA claim for failing to prescribe treatment for her disability is not actionable under the ADA. [Record No. 36-1 at 4] And they argue that she has pled no facts showing animus and that she was discriminated against because of her disability. *Id.* at 5. At the outset, it does not appear that the defendants are challenging any failure to accommodate claim Frymyer may have. Instead, they seem to only be challenging her claim for intentional discrimination.

Frymyer maintains that her ADA claim against MCDC and Tussey in his official capacity is sufficiently pled. [Record No. 37 at 3–12] She insists that the hospital note excerpt provides sufficient facts to support her allegation that MCDC and Tussey discriminated against her by denying her treatment for OUD. *Id.* at 7. Stated another way, she alleges she was denied access to the jail's medical services because her disability was treated by a medication the jail either forbid, did not have a process for obtaining, or would not or could not administer. She further contends that the hospital note creates a reasonable inference of discriminatory

animus against individuals with an OUD because it suggests that a blanket prohibition existed concerning methadone treatment.

The parties do not contest whether Frymyer was disabled and qualified to take part in the medical services provided by the jail.  MCDC and Tussey appear to half-heartedly contest that she was "excluded from participation in" or "denied the benefits of" such "services, programs, or activities" when they cite case law indicating that the ADA does not provide a cause of action for challenging medical treatment of underlying disabilities.  [*See* Record No. 36-1 at 5]; *Keller*, 860 F. App'x at 385.  Instead, their main argument is that Frymyer failed to show that any alleged denial occurred "by reason of" her disability.  *Id.* at 3–6; *Keller*, 860 F. App'x at 385.

The defendants' framing of Frymyer's failure to accommodate claim misses the point. Their construction is that Frymyer claims she was denied methadone because of her disability and that she fails to identify connecting facts that she was denied methadone *because of* her disability.  [Record No. 38 at 2] But her claim is that she was denied (meaningful) access to the jail's medical services because of her disability when the jail refused her the standard-of-care treatment for her disability that her previous provider prescribed.  [*See* Record No. 6 at ¶¶ 22, 28–29, 46.]  To support this claim, Frymyer alleges she was denied her prescribed methadone for five days and that when she was ready to be discharged, MCDC could not initially assure the hospital physician that she would be administered the medication.  *Id.* at ¶ 28.  It is a reasonable inference that because the medication was methadone (rather than something like insulin), the jail did not have a process available to procure and administer it. These facts are sufficient to support her failure to accommodate claim *at this juncture*.

- 9 -

Frymyer's intentional discrimination claim is the trickier of the two. Her Amended Complaint does not specifically allege MCDC and Tussey were motivated by discriminatory animus against those with OUDs in deciding to methadone treatment. Rather, it alleges that she was in the late stages of pregnancy and MCDC and Tussey knew she was prescribed methadone but refused to allow the medication, which caused her to undergo intense withdrawal and miscarry. [Record No. 6 at ¶¶ 20–21, 25, 29] The hospital note also indicates that there were issues with "the availability of methadone in the jail itself and whether or not someone was able to prescribe it." *Id.* at ¶ 28.

The defendants insist that these assertions are insufficient to state a claim for intentional discrimination. Frymyer disagrees, citing *MX Group, Inc. v. City of Covington*, for the proposition that blanket prohibitions (there, it was all methadone clinics in the city) are facially discriminatory and thus violate the ADA. 106 F. Supp. 2d 914 (E.D. Ky. 2000), *aff'd,* 293 F.3d 326 (6th Cir. 2002). In that case, the panel reasoned that blanket prohibitions, by nature, avoid the individualized inquiries that the ADA mandates and are often motivated by "public hysteria based on stereotypes." *Id.* Here, Frymyer argues that the hospital note and the denial of methadone suggest a blanket prohibition for the drug. [Record No. 37 at 7]

Concerning the alleged blanket prohibition, the defendants concede that other out-of-circuit "courts have held a blanket policy precluding inmates with OUD from receiving a particular course of treatment raises that inference of discrimination under the ADA." [Record No. 38 at 3] However, they insist that this case is distinguishable because Frymyer's Amended Complaint lacks "any factual basis for finding that such a policy existed at MCDC." *Id.* But here, the hospital note coupled with Frymyer being denied methadone could create a reasonable inference that some restriction to methadone existed. That the jail later assured the

hospital physician (after likely being told that Frymyer's infant was stillborn) that someone would prescribe and administer methadone does not alter this result.

### C.  42 U.S.C. § 1983 Claim for Deliberate Indifference

"To prevail . . . under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."  *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (citations and quotations omitted).

**Deliberate Indifference to Serious Medical Needs:** A post-conviction detainee's Section 1983 deliberate indifference claim arises from the Eighth Amendment and includes an objective and subjective component.  *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 315 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The objective component considers the conditions that led to the alleged violation and "'requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Constitution.'"  *Id.* (citation modified) (quoting *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020)).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Griffith*, 975 F.3d at 567 (citations and quotations omitted).

The subjective component requires that the plaintiff "show that a defendant 'knew of and disregarded an excessive risk to inmate health or safety,'" the defendant was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,'" and the official drew that inference.  *Helphenstine*, 60 F.4th at 315 (cleaned up) (quoting *Farmer*, 511 U.S. at 837).  The plaintiff need not show that the defendant acted with the intent

- 11 -

to cause harm. Rather, he or she "must show something greater than negligence or malpractice." The requisite standard "has generally been equated with one of 'recklessness.'" *Winkler*, 893 F.3d at 890 (quoting *Farmer*, 511 U.S. at 836). Courts are hesitant to "second guess the medical judgment of prison officials," but the United States Circuit Court of Appeals for the Sixth Circuit has found deliberate indifference where "medical care . . . is so cursory as to amount to no treatment at all." *Winkler*, 893 F.3d at 890 (internal citations and quotations omitted).

Rather than attack the deliberate indifference claim asserted against him in his individual capacity, Tussey argues that he is entitled to qualified immunity because Frymyer failed to allege that he knew or should have known of her need for methadone. [Record No. 36-1 at 8] As discussed in the previous memorandum opinion and order, Frymyer would have been visibly pregnant at the time of her booking at MCDC. [Record No. 32 at 9–10] Frymyer alleges that MCDC was put on notice that she was prescribed methadone and it is a reasonable inference that Tussey, as jailer, was also aware of her methadone prescription. Frymyer further claims that he was aware that she "had a serious medical need or strongly suspected facts showing a strong likelihood that [she] had a serious medical need but failed to confirm whether these facts were true." [Record No. 6 at ¶ 51] This is a sufficient assertion that either he was aware or could have inferred a substantial risk to her health. *Id.* at ¶¶ 51–52; s*ee Winkler*, 893 F.3d at 892 ("[The plaintiff] must show that [the defendant] was subjectively aware of information from which [he or] she could have inferred a substantial risk to [the plaintiff's] health, and that [he or] she acted with reckless disregard to that risk.").

**Qualified Immunity:** Qualified immunity shields government officials from damages based on discretionary acts which do not violate clearly established law of which a reasonable

person would have known. *Comstock v. McCrary*, 273 F.3d 693, 701 (6th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "ordinarily applies unless the contours of the asserted right were sufficiently clear that every reasonable official would have understood that what he was doing violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011)) Determining whether defendant-officials should be cloaked with qualified immunity requires application of a two-part test. First, the Court asks whether the plaintiff has alleged facts which, taken in the light most favorable to her, show that the defendant's conduct violated a constitutionally protected right. *Comstock*, 273 F.3d at 701. Second, the Court must determine whether that right was clearly established such that a reasonable official would have understood that his or her behavior violated the right. *Id.*

Tussey is not entitled to qualified immunity for this individual capacity claim at this stage of the proceedings. To survive a motion to dismiss, the plaintiff need only to plausibly allege Tussey's "'conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Johnson*, 790 F.3d at 653. Frymyer does so here. She plausibly alleges that Tussey violated her Eighth Amendment right to be free from cruel and unusual punishment when he acted with reckless disregard to her serious health need by denying prescribed methadone when she was in the late stages of pregnancy.

**Monell:** Frymyer's Amended Complaint lacks sufficient allegations to state a *Monell* claim against MCDC and Tussey in his official capacity.[3]  Ordinarily, Section 1983 creates liability against *persons* who cause deprivations of constitutional rights.  And liability may extend to a governmental entity under § 1983 only when its official custom or policy causes a violation of constitutional rights.  *Monell*, 436 U.S. at 691.  Likewise, a private corporation acting under state law may be liable under § 1983 where its custom or policy caused a constitutional violation.  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). Because governmental entities may not be liable under a *respondeat superior* theory, a plaintiff must show that the custom or policy was the moving force behind the constitutional violation. *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 543 (6th Cir. 2004).

Where a plaintiff cannot "demonstrate that a written policy exists, he or she 'may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'"  *Id.* (quoting *Monell*, 436 U.S. at 690–91).  "To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal violations."  *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015).

---

[3] The undersigned acknowledges that the memorandum opinion and order on WKCH's motion to dismiss omitted a *Monell* analysis because the Amended Complaint was so lacking such a claim.  However, additional analysis is provided here.

In this case, Frymyer does not identify "actions taken by officials with final decision-making authority" or allege "a policy of inadequate training or supervision."  And her Amended Complaint does not assert that an official written policy existed concerning a methadone ban.  Neither does she allege that a widespread practice existed, nor does she claim other incidents involving denials of methadone occurred before her stay at MCDC.  Instead, Frymyer offers one pertinent threadbare recital in Count II for deliberate indifference to serious medical needs: "[t]he actions of the Defendants were in furtherance of and consistent with one or more policies or practices established by the Defendants."  [Record No. 6 at ¶ 54]

Her response attempts, again, to rely on the hospital note as a supporting fact that demonstrates a policy or custom existed.  But an ADA claim (unlike a *Monell* claim) only requires a plaintiff to demonstrate that the public entity failed to make reasonable, necessary modifications to their policies for disabled persons.  Blanket prohibitions have been found to violate the ADA because they avoid the individualized inquiry the ADA demands.  Here, the hospital note was sufficient to infer that Frymyer was denied that individualized inquiry as she was in the late stages of pregnancy upon arrival to MCDC, had an active methadone prescription, and was denied methadone against the established standard of care.  But it falls short in demonstrating a written official policy existed, particularly considering that MCDC later provided assurances that the methadone would be administered (which in theory would have violated any alleged written policy).

Likewise, the hospital note does not support that a widespread custom existed because neither it nor the Amended Complaint offers any allegation that other persons at MCDC were similarly denied methadone.  *See Sears v. Bradley Cnty. Gov't*, 821 F. Supp. 2d 987, 993 (E.D. Tenn. 2011) (justifying dismissal because "not only is there no evidence of such a 'widespread

practice,' there is no evidence of any other incident in the history of Bradley County wherein a disabled individual with a service animal has been turned away from or delayed entry into a courthouse"). Therefore, Frymyer's claim against MCDC and Tussey in his official capacity in Count II will be dismissed.[4]

### D.  State Law Claims against Tussey in His Individual Capacity

**Negligence:** To assert a negligence claim under Kentucky law, a plaintiff must allege "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (citations omitted). An employer may be held vicariously liable when "the employee's actions were in the course and scope of his employment and in furtherance of the employer's business." *Easterling v. Man-O-War Automotive, Inc.*, 223 S.W.3d 852, 855 (Ky. App. 2007).

Jailer Tussey argues that Frymyer's negligence claim fails because she does not demonstrate that he breached a duty. [Record No. 36-1 at 12] The Amended Complaint alleges that Frymyer was in the "custody, care, and control" of the defendants who "were charged with the duty of overseeing the health, safety, and overall care of inmates housed at and/or otherwise under the care, custody, and control of the Madison County Detention Center." [Record No. 6, ¶¶ 12, 21] She further alleges that Tussey had a duty to ensure her safety as well as the

---

[4] The Court was mistaken in not dismissing Frymyer's claim for deliberate indifference to serious health needs against WKCH. Count II should have been dismissed against WKCH because it is a governmental entity for purposes of Section 1983. Therefore, only a claim against its employees (currently unidentified John Does) could potentially proceed under this count. The below order language reflects this amendment.

safety of her unborn child.  *Id.* at ¶ 30.  And she claims that duty was breached when she was denied methadone against widely understood medical advice.  *Id.* at 31.

Tussey next argues that Frymyer fails to allege that *he knew* she was prescribed methadone.  [Record No. 36-1 at 12–13]  But she claims that MCDC was on notice that Frymyer was prescribed the drug.  [Record No. 6 at ¶ 20]  Further, at this stage of the proceedings, it is a reasonable inference that Tussey (as jailer of MCDC) was aware of her prescription as standard intake forms include a section on current medications.

But Tussey argues that he cannot be negligent in failing to prevent what he could not reasonably anticipate.  [Record No. 36-1 at 13]  But here, where a pregnant woman enters a jail on a medication that if abruptly stopped can trigger withdrawals, a serious risk (including risk of death) to the unborn baby could have been reasonably anticipated.  Stated another way, Frymyer has demonstrated that Tussey had "reason to know" that denying a pregnant woman prescribed methadone in her final weeks of pregnancy posed a severe risk of harm.  *Franklin Cnty., Ky. v. Malone*, 957 S.W.2d 195, 200 (Ky. 1997), *overruled by Com. v. Harris*, 59 S.W.3d 896 (Ky. 2001), *and overruled by Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001) (both overruled on other grounds).

Frymyer, however, fails to state a claim against Tussey for vicarious liability for the actions of others.  Although she argues that Tussey ratified the actions of subordinates in denying her methadone, she is unable to point to any part of her Amended Complaint that supports this ratification theory.  She halfheartedly again points to the hospital note as providing facts supporting such a claim.  [Record No. 37 at 18]  But inferring from that note that Tussey ratified (by her own definition affirmatively approving the actions of a decision of a subordinate) stretches  "a reasonable inference" too far.  *Id.*

**Gross Negligence:** A plaintiff must also show that the "negligence was accompanied by wanton or reckless disregard for the lives, safety or property of others" to state a claim for gross negligence. *Gibson v. Fuel Transp., Inc.*, 410 S.W.3d 56, 59 (Ky. 2013). Gross negligence requires "'an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful.'" *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51–52 (Ky. 2003) (quoting *Cooper v. Barth*, 464 S.W.2d 233 (Ky. 1971)). Frymyer's claim for gross negligence fails against Tussey because she neither alleges nor provides facts supporting the element of malice, willfulness, or wanton disregard of her rights.

**Negligence *per se*:** A cause of action for negligence *per se* under Kentucky law is codified in KRS 446.070. The statute provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." *Wright*, 381 S.W.3d at 213 (citation modified) (quoting KRS 446.070). Frymyer asserts that Tussey is liable for negligence *per se* for violating her rights under the "provisions of KRS 71, *et seq*." [Record No. 6 at ¶¶ 67–69] Chapter 71 outlines the roles and responsibilities of jailers.

Tussey contends that Frymyer's claim fails because she does not identify the specific KRS Chapter 71 provision Tussey has allegedly violated. [Record No. 36-1 at 14] Frymyer argues that "the allegations in the Amended Complaint clearly allege that Defendant Tussey violated numerous roles and responsibilities in his capacity as jailer to maintain the health and welfare of [the plaintiff] while she was in his care custody and control." [Record No. 37 at 21] She appears to reference the following provision in KRS 71.040: "[t]he jailer shall treat

- 18 -

[incarcerated persons] humanely." At this stage of the litigation, she has plausibly alleged a violation under KRS Chapter 71.

**Loss of Consortium:** "KRS 411.130(1) authorizes individuals to recover damages from the negligence or wrongful act of a person resulting in the death of another person." *Miller v. Bunch*, No. 2019-CA-1856-MR, 2021 WL 402552, at *2 (Ky. Ct. App. Feb. 5, 2021) (reversed on other grounds). The statute provides:

> Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it, or whose agent or servant caused it. If the act was willful or the negligence gross, punitive damages may be recovered.

KRS 411.130(1). "Under KRS 411.135, when the deceased person is a minor child, 'the surviving parent, or parents, may recover for loss of affection and companionship that would have been derived from such child during its minority, in addition to all other elements of the damage usually recoverable in a wrongful death action.'" *Miller*, 2021 WL 402552, at *2 (quoting KRS 411.135). Here, Tussey argues that because Frymyer's loss of consortium claim is derivative of her tort claims, it too should be dismissed. [Record No. 36-1 at 14–15] However, the negligence claim remains; therefore, Tussey has not met his burden in showing that Frymyer failed to state a loss of consortium claim.

### E. Punitive Damages

Count VI includes a claim for punitive damages against MCDC and Tussey in his individual and official capacity. Much like the loss of consortium claim, MCDC and Tussey argue that "because Frymyer has not stated any plausible claims against [them], her claim for . . . punitive damages must be dismissed." [Record No. 36-1 at 15] But several of her claims have survived; therefore, MCDC and Tussey have failed to meet their burden. However,

because Kentucky law requires that punitive damages be tied to an underlying claim, the punitive damages stand-alone claim will be dismissed. *See Ammon v. Welty*, 113 S.W.3d 185, 188 (Ky. Ct. App. 2002) (explaining that punitive damages are only available when claims are asserted on which actual damages can be awarded).

## IV.  Conclusion

Based on the foregoing analysis and discussion, it is hereby **ORDERED** as follows:

1.     Defendants Madison County Detention Center and Jailer Steve Tussey's Motion to Dismiss [Record No. 36] is **GRANTED** regarding the following claims asserted against them:

(a)     the alleged violation of the Americans with Disabilities Act (Count I) against Tussey in his individual capacity;

(b)     deliberate indifference under 42 U.S.C. § 1983 based upon protections provided by the Fourteenth Amendment to the United States Constitution (Count II) against MCDC and Tussey in his individual and official capacity;

(c)     deliberate indifference under 42 U.S.C. § 1983 based upon protections provided by the Eighth Amendment to the United States Constitution (Count II) against MCDC and Tussey in his official capacity;

(d)     negligence, gross negligence, negligent training, supervision, and retention (Count III) against MCDC and Tussey in his official capacity;

(e)     gross negligence, vicarious liability for the actions of subordinates, and negligent training, supervision, and retention (Count III) against Tussey in his individual capacity;

(f)　　negligence *per se* based upon alleged violations of the United States Constitution, the Kentucky Constitution; and the Americans with Disabilities Act (Count IV) against MCDC and Tussey in his individual and official capacities;

(g)　　negligence *per se* pursuant to Chapter 71 of the KRS (Count IV) against MCDC and Tussey in his official capacity;

(h)　　loss of consortium (Count V) against MCDC and Tussey in his official capacity; and

(i)　　punitive damages as an independent cause of action (Count VI) against MCDC and Tussey in his individual and official capacity.

2.　　Defendants Madison County Detention Center and Jailer Steve Tussey's Motion to Dismiss [Record No. 36] is **DENIED** regarding the following claims asserted against them:

(a)　　alleged violation of the Americans with Disabilities Act (Count I) against MCDC and Tussey in his official capacity;

(b)　　Section 1983 claim for deliberate indifference under the Eighth Amendment to the United States Constitution against Tussey in his individual capacity;

(c)　　negligence (Count III) against Tussey in his individual capacity;

(d)　　loss of consortium (Count V) against Tussey in his individual capacity; and

(e)　　negligence *per se* for alleged violations under KRS, Chapter 71 (Count IV) against Tussey in his individual capacity.

3.　　The prior Memorandum Opinion and Order entered March 3, 2025, [Record No. 23] is **AMENDED** to dismiss the Section 1983 claim for deliberate indifference under the

Eighth Amendment to the United States Constitution against West Kentucky Correctional Healthcare, LLC consistent with this Memorandum Opinion and Order.

Dated:  September 30, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky